Thank you, Your Honors, and may it please the Court, my name is Keith Donohue, and I am here on behalf of the appellant, Mr. William Colon. If I may, I'd like to reserve three minutes of my time for rebuttal. Granted. Thank you. Your Honors, in a case where the only question the jury has to decide is whether the defendant had a gun, it's difficult to imagine anything more prejudicial than testimony that he was going to murder someone. Well, you use that premeditated murder, killing, homicidal intent 11 times in your reply brief alone. The actual word was shoot someone. You're putting a gloss on it. That's correct, Your Honor. The gloss the government put on it in sentencing was that it was an attempted murder, so I think it's fair that the jury would allow it. The statement said shoot someone. The statement was shoot someone. So that evidence came in even though the government had no actual need for it. According to the government, it had plenty of ways to prove that my client was in possession of a gun. It had two officers who claimed to have caught him. Helpful in the sense that I think the district judge said, well, he had showed that he had a motive to kill your guy, right? It did show he had a motive, and in that sense, it was relevant within the very broad test of Rule 401. But the question here, of course, has to do with Rule 403 and whether it had sufficient probative value to permit admission under that rule. Under the circumstances of this case, it most certainly did not. There was no need of evidence for motive because when you have a case involving possession of a gun, jurors will readily comprehend that there are many reasons a defendant may have motive to have a gun. But your client is asserting he didn't have a gun on the day in question, so isn't it important to know whether he had a motive to possess a gun? Well, it's not important in light of the alternative ways that the government had to attempt to prove he had a gun. What were those? The alternative ways were the classic ways you would try to prove this. They had two officers who claimed to have caught him in the act of possessing a gun, and they had two informants who claimed to have heard him confess to having a gun. They had documentary evidence that they urged corroborated the officer's account. If all of that evidence was too shaky to bring back a guilty verdict, then that should have been the end of the matter. Your Honor, it was too shaky for a jury to find my client guilty without a reasonable doubt, but it wasn't the end of the matter because the government piled on and it brought in this enormously prejudicial testimony that my client was lying in wait to shoot a man in the face. Now, that testimony is unfairly prejudicial by any standard. In this court's decision in Hemel Rights, the court offered this description of what unfair prejudice was. It's evidence that has the potential to frighten the jury into ignoring evidence that might otherwise raise a reasonable doubt. There was certainly evidence here that could have otherwise raised a reasonable doubt, and this was very frightening evidence. This was evidence that if the jury put my client back on the street, he was going to be an immediate danger to a particular man in the face and to the public at large. And once the jury heard that, it was going to change their whole perception of what was at issue in this case. Did the district court, you know, do the 403 weighing on the record? It did not, Your Honor. What it did is it said there was probative value. It appears, it's not perfectly clear, it appears to recognize there was a danger of unfair prejudice. But it didn't state what weight it would assign either. And then when it did get around to the usual terms in which a balancing would be expressed, it simply said that the probative value was not outweighed by any amount of prejudice. So, again, we see it not identifying what weight either of the factors on the scale had. If we were to hear the district judge as having said the probative value of this testimony is so significant that no amount of unfair prejudice could outweigh it, then that was clearly unreasonable and an abuse of discretion. But I think we should give the district court the benefit of the doubt and simply that it didn't put on the record what its rationale was. It didn't state how it could be necessary to let in this incredibly prejudicial evidence. Well, necessarily is not the standard, right? Well, there's a better way of putting it is genuine need. But I think the case that describes the standard most clearly is Sree Youth. In Sree Youth, the court spoke of evidence that has a strong potential to provoke strong adverse sensitivity in the jury. I think this evidence is clearly of that kind. And when the evidence is of that kind, it says the government has to show genuine need. And in order to do that, the court looks to whether there are alternative ways to prove the contested issues, how strong the disputed evidence is. But I didn't hear you offer any alternative method that would have gotten the question of motive. Isn't it clear that qualitatively there's quite a difference between two officers and two informants taking a witness stand and saying he had a gun, period. And other witnesses saying he had a gun. Well, how do you know he had a gun? Well, because why did he have a gun? Well, he was going to shoot face. That explication of motive is qualitatively different than the declaration that he had a gun, isn't it? The informants were not simply declaring he had a gun. They didn't mean to say he was going to shoot face to be able to offer a full narrative account. Well, what would you have had them say then that would have covered the motive issue? Well, I think that they said enough of other details of the supposed encounter that there was no need for motive evidence for the jury to have a full opportunity to assess whether or not they were credible. What were those details? The details were they were allowed to testify to the caliber of the gun. They were allowed to testify to where Mr. Colon supposedly said he was standing when the police came up, to how he started to walk away, to how the police yelled from their car at him, to how they then approached him, how he then ran, how he was brought to the ground. So that's all corroborative of what the police officers said. That would be corroborative. A good defense lawyer would latch on to that and say, well, these two jailhouse snitches are just parroting what you heard from the officers, right? But talking about the motive to shoot face would not be parroting what the officers said. It would be totally additional to what the officers said, right? Well, it would be additional, but the jury couldn't reasonably believe that these informants had heard what the officer's account was. They weren't in the courtroom when the officers were testifying. So to the extent that they were... No, but it wouldn't be the first time a good defense lawyer or good prosecutor would get up and say, oh, isn't this a coincidence? We've got four different witnesses, and they're all saying from the same sheet of music. I mean, that would be the argument, would it not? Right, that would be the argument, and that's why there was no need for the prosecution to pile on with this further evidence of motive. I'll grant you that motive is ordinarily relevant. Well, that's what I'm getting at. If it is piled on, I think you've got something here, but I'm trying to ascertain whether it's truly piled on or whether it's qualitatively different. Those details you're telling me about the caliber of the gun, the location of the takedown, et cetera, et cetera, I don't see any motive involved in that, is there? No, the informant did not testify to motive. So the only piece of evidence is I was going to use it to shoot face. That's the only manner in which the informant spoke to motive. But that was terribly prejudicial to your case because it makes your client look like a very violent, dangerous man. So it was clearly prejudicial, but like so many of these cases, the hard question is, is it unfairly prejudicial? Devastating to one's case doesn't equal prejudicial under 403 balancing, right? It has to be unfairly prejudicial. Well, it is unfairly prejudicial, Your Honor, and the reason I'm urging that is because the government did not need proof of motives by any means. Well, that's why I'm sorry. I'll stop. This is what you said to me three or four times. Can the government only put in what it needs, or can it put in what's helpful to getting a conviction? Well, the probative value has to stand up under Rule 403, so the risk of unfair prejudice has to substantially outweigh the probative value. That's of course a test. Maybe we should look at a case like Cross. Maybe that would be an illuminating case. There you've got court personnel convicted of fixing cases to have the defendants convicted. Now, when you hear that, when a jury hears that, it's going to make them wonder, well, why would they do that? And so motive became important, and the only way for the government to prove motive was to show that, in fact, in other cases, the court personnel had fixed the outcomes for acquittals, and that these were quid pro quos with officers, so there's their motive. This case is entirely unlike that. In my experience, it's not even the standard rule that we have motive evidence introduced against our clients in 922G cases. Because it's common knowledge that guns and drugs go together. That's one reason you might have a gun. You might have a gun for self-defense. You might have a gun for any number of reasons, some legal, some illegal. But just like you wouldn't doubt that someone might engage in a fraud because they want money, you wouldn't doubt that someone might have a gun because they want to have a gun. It's not the sort of conduct that requires proof of motive to dispel any doubt the jury would otherwise harbor. The government's case here was, in fact, very weak, and I don't want that to be forgotten. It was a gun-planting case, and I know you're going to see a lot of those. But it was not your typical gun-planting case. First of all, we have, of course, the inherently strange testimony that my client, while handcuffed behind his back, was able to ease a gun out of his side, spin around, and aim it at each officer. I have an awful lot of problems with some of the testimonies. You're familiar with the DOJ statistics of law enforcement being murdered by handcuffed defendants in the back of police cruisers? I'm not, y'all. It's happened. Our case that the government's case was weak is certainly not limited to any apparent improbability of that testimony. There's much, much more than that. Officer Ramos said that he didn't see a gun because at the time the gun came out, he was busy getting the cartridge off his taser. But the testimony he gave six days after the arrest was that before he ever saw a gun, he'd gotten the cartridge off and pressed the electrodes underneath that cartridge into my client's multiple times. The testimony is utterly irreconcilable. There's no way to explain how supposedly he didn't see the gun because he was preoccupied with getting the cartridge off, while his testimony much closer in time was that he burned the client long before ever seeing a gun. Of course, he better say he only burned the client after seeing a gun. Otherwise, it looks like excessive force. You know, officers for road drain fare no better. There was the issue that he's patting down a man wearing sweatpants, and it's confirmed unequivocally that he pats down that man on the sides, on the front, and on the back, and he finds no gun. He then tries to wriggle out of that testimony and says, no, no, I didn't have him down on his side. So that's why I didn't find him. And immediately, defense impeached him with the prior testimony that he had. And things only got worse for officers for road drain. As he was getting frustrated with the cross, he ultimately declared, well, he didn't even have ID on him. We would have brought him into the station anyway. But lo and behold, the defense brings in a prison guard to say, well, he was booked. He had an ID on him. You know, the documentary evidence that the government had was equally powerful for the defense case. Ramos goes on the radio to ask for help, says nothing about a gun. A radio call without mentioning that there's a gun on the scene. The Taser report shows that long after all the other times a Taser was used, my client was shot one more time. That was irreconcilable with the police's testimony. It also shows significant doubt as to whether he really had any time to comply with their commands before they sent 12,000 volts of electricity through his body three times. So the government's case was full of doubt, Your Honors. And what happened was that the face testimony, the most prejudicial testimony imaginable on a case like this, frightened the matter of concern. I'm sorry, I see my time is up. Yes, we'll get you a rebuttal. May it please the Court, Assistant United States Attorney David Axelrod. Mr. Axelrod, let me follow up on Mr. Donahue's questions. Both Slobodin and Ramos testified that Cologne was given time to comply with their orders between the first, second, and third firing of the Taser. Yes, Slobodin said we gave him minutes to comply. But the law demonstrates only one second passed between the first and second firings and only seven seconds passed between the second and third firings. Well, Your Honor, I don't recall Officer Slobodin taking those minutes. It was on cross-examination. It was on page 8315. Well, I'm guessing that was in there because I'm guessing on the record he said it was probably seconds. Officer Ramos, who actually was Taser, did say he ordered him to comply and he gave him time. Your Honor, you can certainly understand in a situation where a defendant is running away from police officers and the officer fires his Taser, that things happen very quickly. And he could have been willing to let him stay down, although the Taser was still going on. Let me interrupt you. On page 8315, we gave him minutes to comply. Well, Your Honor, that wasn't his testimony in direct. No, it was on cross. It was on cross. I'm guessing that was simply an error, Your Honor. But you're piling up these errors here, if Mr. Donahue is to believe. How is it possible now for a man who's been Tased three times and cuffed behind his back to reach around to his front side, remove a weapon from a holster tucked inside his pants, and then manipulate that weapon with sufficient dexterity to point it at an officer? Actually, Your Honor, it was quite easy. As Officer Silbodrian testified, he did a demonstration at trial. Officer Silbodrian, wearing his full body armor and being quite more chunky than William Colon, came down off the stand. He was handcuffed by Detective Francis Carroll of the ATF, exactly as William Colon was handcuffed. He then reached around, just as he testified William Carroll did, and successfully pointed that gun at the juror to ask him to point it down. But it happened just as he did. Because I've been trying to do that now. My law clerks will tell you for a couple of weeks that I can't do it. I guess I'm not as agile as Officer Silbodrian. Well, Officer Silbodrian isn't agile, so I won't give him that. But he did it with ease. He had dexterity in his fingers, able to get it around to the front, inside the waistband where they found the holster, and get it out of the holster and point it straight at Silbodrian's stomach. Yes, Your Honor. It's quite remarkable. I think the defense describes it as the inherent eyebrow-raising quality of that testimony. Well, it wasn't eyebrow-raising to the jury, Your Honor. The jury saw it from two feet away. Let me ask you one other nasty question. Yes, Your Honor. Why did the officers fire the taser the seventh time, some two and a half minutes after the sixth firing? Well, Your Honor, I'm not sure that they were even asked about that in cross-examination. But as you will recall from the record— From the walk. It's two and a half minutes. Yes, Your Honor. I'm not sure that either officer was asked about that during cross-examination. But you will recall that there were two specific events. The first, three firings where it was in cartridge mode when Mr. Colon was taken down on the sidewalk. Then there's a large time-lapse where the gun is pulled on the officers and the officers have to wrestle him out of the police car. And those are taser firings in succession, which completely absolutely corroborated exactly what the officers testified to multiple times. I don't know the explanation for the seventh firing, though. Well, Ms. Jacobs, obviously it's your job to defend the conduct and the testimony of these officers. But, you know, presumably the point of going into this is that at least the first jury, you know, was highly suspicious of all these circumstances and enough to raise reasonable doubt. A couple of them, you know, wouldn't agree to a verdict. And what brought to my mind the case over the threshold at the second trial was this, you know, 403 testimony, right, about his motive for having the handgun, which was not given at the first trial. And it makes it, I think, all the more important. Now, my understanding is that the trial judge really did not, on the record, weigh the probative value against the prejudicial effect under 403. Is that right? Well, Judge, there seem to be a lot of questions in that one question. I want to try to break it down. I'll answer your last question first, and then I'll move backwards. Your last question was whether Judge Rubino effectively weighed the 403 analysis, and he clearly did, Your Honor. There was two hearings, as the record demonstrates. At the first hearing, Judge Rubino asked me point blank, wouldn't this be unfairly prejudicial because the jury could construe the clone was on his way to commit murder? Okay. After that first hearing, the judge chose not to admit this testimony to face testimony. He chose not to make a ruling at that time. Exactly. You're right, Your Honor. He chose to wait and see what the defense argument would be. He wanted to see if, again, the defendants would attack the cops as being liars who pointed the gun on their client. Only after hearing the opening statement of the defense counsel on the same attack did he conclude, at the second hearing on this issue, that the 403 measure had been met, and the probative value to show motive for credibility was not substantially outweighed by the possible effect that they could think he was going to commit murder. But I want to step back and answer your first question, and that was whether there was reasonable doubt in the first trial. It's very rare that we, as judges and litigants, get a chance to look inside the jury process. And in this case, we did. We got a small peak. And that peak, I would argue, was very helpful for the government. The note from the jury was, we are deadlocked at 11 to 1. The one juror does not believe the police officers, and they noted their frustration. Is there any way we can kick this juror off the jury panel? This is very interesting. I don't want to spend a lot of time speculating on what was in the juror's mind, because I think that's inappropriate. But 11 jurors, and apparently one who they were frustrated with, believed the government's evidence. And all 12 did at the second trial. I don't think anything more needs to be said about that, but I don't think we should delve too much into the fact that it was 11-100. Did you have this follow-through evidence available before the first trial, or did it just come to light between the two trials? It came to light in the intervening time between the first trial and the second trial, Your Honor. A fortuitous occurrence, to be sure. Well, Your Honor, actually, it's very interesting you say it's fortuitous, because as Judge Hartman properly noted, when- That was nasty. No, I didn't mean anything nasty. When the two informants took the stand, a good trial lawyer, which the representative from the Federal Defenders was, questioned the first witness, Han Fock, and made the allusion, didn't you steal his paperwork, meaning his police paperwork? Because had he only testified to the facts that the officers testified to, the credible argument could have been made that these two jailhouse informants were looking for a deal. And what did they do? They're stuck over at the Federal Detention Center. They stole his paperwork, and then they went to Ms. Ratzlaff, and they said, we got these facts for you. But that's not what they did. But they are looking for a deal. They are looking for a deal, Your Honor. There's no doubt about that. We can all agree about that. But they testified to a fact that wasn't to be found anywhere else. And that fact was, why was Colon on the corner that night? Well, he was on the corner that night because he had a gun, because he wanted to shoot face, and because it was over a $3,000 PCP debt. Actually, it was $4,000, I think. Judge Brito probably weighed all this and said, for possessing this reason, the reason he had a gun is important, but the stuff about the PCP debt probably goes over the line, and he wouldn't let me enter that into evidence. And the judge did a very, very credible job analyzing important evidence, carefully analyzing it, asking many questions of myself, asking many questions of the defense counsel, and made a discretionary ruling that I hope this court will really credit. He found that the evidence was probative, and he also found that it was prejudicial. I don't think it's entirely prejudicial. We have cases in this court, this Third Circuit, that have admitted much more difficult evidence. The case mentioned by Mr. Donahue, Shreve, in that case it's a kidnapping case. The court admitted evidence that the kidnapper raped the victim. And this is much more nasty evidence. But why was it entered? Because the defense in that case was that the victim consented to the kidnapping. Why was the evidence probative here? It was probative here because the whole defense was that our two police officers committed an abusive force and needed to cover it up. Do you concede if the defense had been something other than that, that this would have been unfairly prejudicial? I do not, Your Honor. Why wouldn't it have been? Why do you need motive then if they're not accusing the police of planting the gun? I think motive is always important. It paints a forward picture for the jury of what happened that night. It paints a forward picture. But the motive of another crime is obviously inherently prejudicial. Suppose the proffer or something like this, well, the defendant told the jailhouse informant, well, I always carry a gun because I'm a big-time drug dealer, and I need it for my protection. You think that's admissible? Because it shows motive? I think that is similar to what we had in this case. And the judge chose to parse it very closely and do a very careful job of weighing the balance and keeping up the drug testimony. I don't understand that parsing. Why is the motive to murder admissible but the motive to protect the drug supplying not? Why is one more prejudicial than the other? Well, Your Honor, I don't think one is more prejudicial than the other. At the trial court, I made the argument that all of it should have been admitted. The judge, however, disagreed with me, and he used his discretion to decide that one piece of it should have been admitted and one should have been admitted. You wanted to bring in his two prior drug convictions as well, and you wouldn't let those in. I did, and I wanted to use that to bolster the credibility of the two informants who have testified that it was over a PCP debt. And interestingly enough, one of his prior convictions was for PCP possession with intent to distribute. I thought that was very compelling evidence that would help the jury assess the credibility of the two charges. Of course, let's go right back to it, though. This was a case about simple possession of a gun by a convicted felon.  No, Your Honor. It is simple possession and where the defense was the sole defense was the two police officers because of minor, and they are minor, but let's ignore the sound of fury. There were very minor discrepancies in their testimony. Because of these minor discrepancies, suddenly these two police officers who have sworn to uphold the law are suddenly miscreants who are carrying around a gun to just happen to plant it on someone just in case they commit misconduct that night. It's a fanciful story. But given that fanciful story, I, as the government prosecutor, felt it very important to bring evidence that would establish their credibility, and I thought it was necessary. And I thought the evidence of motive, of why he had that gun that night, was very probative of both the police officer's testimony and it was very probative of the credibility of the informant's testimony, on the other hand. Is it necessary? Well, it's helpful. It's helpful, but necessary is a big difference between helpful and necessary. Necessary is really besides the point. Your Honor, the test is, we all know, and I'm not going to repeat it, but it is a necessity. We thought the PCP was important, too. I didn't get that. I did, Your Honor. You take evidence, and you let the whole kitchen sink in. Your Honor, as a prosecutor, the more evidence that will allow the jury to assess the credibility of my witnesses and hopefully find them credible, I want it all in. But I'm not the overture of the balancing of 403 and 404. Judge Rodriguez did that, and he did it credibly, and he did it admirably. Very briefly, even if your court was defined that some error was committed, and I certainly do not agree with that conclusion, but the evidence in this case was strong. The idea that one juror didn't trust the cops, making this case weak, is an illusion. Two police officers tested consistently, testified consistently, multiple times about the events of that night. Two jailhouse informants tested consistently about what they heard from the defendant as they sat at the federal detention center. They corroborated the police officers, and they introduced more facts. So even if you ignore the fact of the gun, you've got four witnesses who are all saying the same thing. And that evidence was corroborated by the taser evidence from the taser cartridge itself, and it was corroborated by the police radio call that night that was made contemporaneously with the event. So in conclusion, Your Honor, Judge Rubino's decision was careful and correct, and there's no basis to overturn it, Your Honor.  Thank you. Rebuttal. Your Honor, maybe I'll just begin my rebuttal by reminding the court of the prosecution's closing argument at the trial. It's rumored that the prosecution had two officers who testified that they found my client supposedly in the act of possessing a gun. And counsel just stated that those officers were credible. Well, if that was the case, it's curious that the prosecutor began and concluded his closing argument with the testimony of the jailhouse informants, started and ended with the jailhouse informants when supposedly these cops were so credible. The closing argument began by asking the jury, stating to the jury, you know why we're here. We're here because Mr. Colon was on a street corner waiting to hit up a man in the face. Remember, the word gun wasn't even in the sentence, Your Honors. The final statement was a much more vague allusion, but it asked the jury to remember what Han Fok and Sika Lam said to you. I'd like to talk just a tiny bit more about this before I move on to that. The two informants, as I understand the record, they testified not only about shooting face, but they also testified that your client admitted having possessing the gun, correct? Correct. And you don't challenge that? We're not challenging the admissibility of the evidence. It's a critical point. And the jury, you're saying the jury was swayed by that testimony that he was going to shoot face? Yes. So obviously then the jury was swayed by their testimony that your client admitted possessing the gun. The danger is, the reason that the verdict still can't be sustained is because we don't know that the jury credited the informants enough to hold the government to its burden of truth without a reasonable doubt. It may have decided, ah, we're worried the informants are telling the truth. Maybe they're telling the truth. You know what? Probably they're telling the truth. Don't we have to look at the verdict in the light most favorable to the verdict winner and all the facts and inferences therefrom? I don't think so, Your Honor. I think the test is whether it's highly probable that the same verdict would have been returned but for the face testimony. Let me ask it a different way. How can you convincingly argue that the jury believed the informants' testimony that your client intended to shoot face and not believe their testimony that your client admitted to them that he possessed a gun? Because the jury may have declined to test the informants' credibility closely enough to discharge their duty to determine whether my client was guilty without a reasonable doubt. They may have decided, we barely believe that the informants are telling the truth. But once they heard that he had a gun because he was going to murder someone, they were going to shade things in favor of the government. They weren't going to want to put him back on the streets. So they were going to let it go. Isn't it equally as plausible, though, that the jury would react and say, oh, these guys are definitely making this stuff up now. This sounds like fantasy land. I mean, that cuts both ways. If it could have gone either way, then reversal is warranted because the standard is that the court has to be able to say it's highly probable. And that standard is more than more likely than not. Well, I guess what I'm suggesting is if it cuts both ways, if they go the fantasy land route, then they're not going to believe the admission that he possessed a gun and your client's going to be acquitted. But if they find the face testimony credible, how could they not also find the admission testimony credible? Aren't the two linked, I guess, is what I'm asking. I think the two aren't linked. The key here is reasonable doubt, reasonable doubt. It may have believed the informants on both points but not believed them well enough to actually put the government to its burden or prove beyond a reasonable doubt. Thank you. This case was extraordinarily well argued. Both sides really very well argued. And we will take it under advisement. Thank you.